Togut, Segal & Segal LLP
*Proposed Attorneys for Albert Togut*
*Not Individually But Solely in His Capacity*
*as the Chapter 7 Interim Trustee*
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
In re:                                                      :
                                                            :
                                                            :       Chapter 7
                                                            :       Case No. 20-10846 (SCC)
MYND SPA & SALON, INC.,                                      :
                                                            :       (Jointly Administered)
                                        Debtor[1].          :
                                                            :
------------------------------------------------------------x

## CHAPTER 7 INTERIM TRUSTEE'S OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE (I) REJECTION OF CERTAIN LEASES AND AGREEMENTS AND (II) ABANDONMENT OF PERSONAL PROPERTY

> THIS MOTION SEEKS TO REJECT CERTAIN LEASES AND AGREEMENTS. PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES AND RESPECTIVE AGREEMENTS ON SCHEDULE 1 TO EXHIBIT "A" ANNEXED HERETO.

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

ALBERT TOGUT, not individually but solely in his capacity as the

Chapter 7 Interim Trustee (the "Trustee") of the estates of SASOS Holdings, Inc.

("Holdings"), SAS OneSource, Inc. ("OneSource"), Mynd Spa & Salon, Inc. ("Mynd

Spa"), and OneSource Service, Inc. (collectively, the "Debtors"), by his attorneys Togut,

Segal & Segal LLP (the "Togut Firm") hereby submits this application (the "Motion")

---

[1]   The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) SASOS Holdings, Inc. (4903) (Case No. 20-10844);  (ii) SAS OneSource, Inc. (5504) (Case No. 20-10845);  (iii) Mynd Spa & Salon, Inc. (5718) (Case No. 20-10846);  and (iv) OneSource Service, Inc. (4067) (Case No. 20-10847).

for an order (the "Order") substantially in the form annexed hereto as **Exhibit A**

authorizing the Trustee to (i) reject the leases and management services agreements set

forth on **Schedule 1**[2] attached to the Order (as may be amended, the "Rejected

Contracts"),[3] effective *nunc pro tunc* to the Petition Date (defined herein) and (ii)

abandon certain personal property, as more specifically set forth below.  In support of

this Motion, the Trustee respectfully submits the declaration of Neil Berger, a member

of the Togut Firm, attached hereto as **Exhibit B** (the "Berger Declaration").  In further

support of this Motion, the Trustee respectfully represents:

### RELIEF REQUESTED

1.      The Trustee respectfully requests entry of the Order (a) authorizing

the Trustee to reject the Rejected Contracts, effective as of the Petition Date (defined

herein) and (b) authorizing him to abandon personal property of the estate, including,

*inter alia*, *di minimis* cash located in locked safes (the "Cash")[4], inventory of spa products

(the "Inventory"), furniture, fixtures and equipment, and other personal property that

may be located at leased premises that are subject to a Rejected Lease (the "FF&E,"

together with the Cash and the Inventory, the "Personal Property") and which are

subject to the Rosenthal Lien.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider the Motion pursuant to 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States*

*District Court for the Southern District of New York*, dated January 31, 2012.

---

[2]   The Trustee reserve all rights to modify the schedule of the Rejected Contracts, including by removing one or more leases from **Schedule 1** without prejudice to his rights to reject such leases at a later date.

[3]   Inclusion of a lease on **Schedule 1** to the Order does not constitute an admission by the Trustee that the lease is an unexpired lease under section 365 of the Bankruptcy Code (defined herein).

[4]   The Trustee has concluded that the Cash is subject to the Rosenthal Lien (defined below).

2

3. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The legal predicates for the relief requested herein are sections 362, 365 and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003, 6006, and 9014, and Rules 6006-1(a) and 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

## BACKGROUND

### I.   The Chapter 7 Case

5. On March 19, 2020 (the "Petition Date"), the Debtors each filed a voluntary petition for relief (collectively, the "Chapter 7 Cases") under Chapter 7 the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

6. On March 24, 2020, Mr. Togut was appointed as the Chapter 7 Interim Trustee of Mynd Spa, and he was appointed as Chapter 7 Interim Trustee of the other Debtors on March 30, 2020;  he duly qualified and is acting as Trustee herein.

7. The petitions and schedules filed by the Debtors indicate that Holdings owns 100% of the shares of each Mynd Spa and OneSource.  *See* Case No. 20-10844 (SCC), Docket No. 1 at 5.  The Trustee has discovered that the same management team that operated Holdings, Mynd Spa and OneSource also operated OneSource Service, Inc.

8. Moreover, it appears that all of the Debtors operated as an integrated enterprise.  As a result of the common ownership interests and management shared by each of the Debtors, the Debtors are "affiliates" as that term is defined under

3

section 101(2) of the Bankruptcy Code.  On April 2, 2020, the Court entered orders directing the joint administration of the Debtors' cases for procedural purposes only.

9.      Prior to the Petition Date, the Debtors operated a chain of luxury spas with locations across the continental United States, including New York, Chicago, Phoenix, Ft. Lauderdale, and Washington D.C.  As part of those operations, the Debtors entered into a warehouse lease for premises in Elgin, Il. and leases with landlords at retail locations (the "Debtor Leases")[5] and operating agreements with certain hotels (the "Operating Agreements," and with the Debtor Leases, the "Debtor Contracts") that enabled the Debtors to operate spas and administrative functions at the leased premises (the "Leased Premises").

10.     The dockets maintained for the Debtors' Cases confirm that the Trustee has not operated any of the Debtors' spas or any other aspects of the Debtors' businesses.

**II.     The Rosenthal Liens**

11.     The Trustee has confirmed that prior to the Petition Date, Rosenthal & Rosenthal, Inc. ("Rosenthal") perfected liens against substantially all of the Debtors' assets.  Rosenthal asserts that as of the Petition Date, its claims against the Debtors total approximately $745,000 (the "Rosenthal Secured Claim") and Rosenthal has provided documentation to the Trustee in connection with its secured claim.[6]

**III.    The Rejected Contracts**

12.     The Trustee has engaged in discussions with parties concerning the sale of all or a portion of the Debtors' Personal Property (a "Sale").  However, no party has made an acceptable proposal to the Trustee to purchase the Debtors' Personal

---

5    Debtors Mynd Spa and OneSourse are parties to the Rejected Contracts.
6    All of the Trustee's rights regarding Rosenthal Secured Claim are expressly preserved.

4

Property and/or assume the Rejected Contracts, as all offers have been for substantially less than the Rosenthal Secured Claim.  Consequently, as part of the Trustee's efforts to maximize the value of the estate for creditors and eliminate the accrual of potential administrative expenses, the Trustee intends to terminate burdensome and costly contracts that do not otherwise have value if not included in a Sale.

13.    The Trustee has identified the Rejected Contracts because they do not appear to be marketable to prospective buyers or operators.  Moreover, if the Trustee does not reject these contracts, they could accrue post-petition use and occupancy fees at the expense of the estates with no corresponding benefits.  Accordingly, for the reasons set forth below, the Trustee seeks authority to reject the Rejected Contracts effective as of the Petition Date.

### BASIS FOR RELIEF REQUESTED

**I.    Rejection of the Leases Is a Proper Exercise of the Trustee's Business Judgment**

14.    Section 365(a) of the Bankruptcy Code provides that a trustee, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a); *see, e.g., Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed.") (quoting *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)).

15.    A trustee's rejection of an executory contract or unexpired lease is governed by the "business judgment" standard.  *See, e.g., In re Enron Corp.*, No. 01 B 16034 (AJG), 2006 WL 898033, at *4 (Bankr. S.D.N.Y. Mar. 24, 2006) ("In determining whether to approve a trustee's decision to reject such lease or contract, a court applies the 'business judgment' test which is met if the rejection is beneficial to the estate."); *In*

*re Ames Dep't Stores, Inc.*, 306 B.R. 43, 51 (Bankr. S.D.N.Y. 2004); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (recognizing the "business judgment" standard used to approve rejection of executory contracts); *In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 25 (2d Cir. 1996) (same). The business judgment standard requires a court to approve a trustee's business decision unless that decision is the product of bad faith, whim, or caprice. *See, e.g., Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985).

16.    Rejection of an executory contract or an unexpired lease is appropriate where such rejection is beneficial to a debtor's estate. *See, e.g., In re Orion Pictures*, 4 F.3d at 1098-99 (2d Cir. 1993); *In re Stable Mews Assocs., Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). Upon finding that a trustee exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of creditors and parties in interest, a court should approve the rejection under section 365(a) of the Bankruptcy Code. *See, e.g., See In re Old Carco LLC*, 406 B.R. 180, 206 n.34 (Bankr. S.D.N.Y. 2009) (part of Bankruptcy Code section 365's overarching purpose is "allowing a [trustee] to exercise its business judgment and evaluate and reject contracts when the [trustee] determines rejection benefits the estate.").

A.    **No Bidder Has Agreed to Assume the Rejected Contracts**

17.    While the Trustee has had conversations with Bidders to purchase all or a portion of the Debtors' assets pursuant to sections 363 and 365 of the Bankruptcy Code, including the Debtors' interests in certain of the Debtor Contracts, no interested party has agreed to assume the Rejected Contracts.

18.    However, a purchaser/assignee who may seek to assume one or more of the Rejected Contracts upon terms acceptable to the Trustee may be identified after the filing of this Motion, but before the hearing to consider the Motion (the

"Rejection Hearing"). Consequently, the Trustee reserves the right to remove any Rejected Contract from **Schedule 1** prior to the Rejection Hearing.

### B.     The Cost of the Contracts Outweighs Any Prospective Benefit to the Estates

19.     The Trustee has also determined that the Rejected Contracts are not a source of potential value for the Debtor's estates by assumption and assignment. The bulk of the Rejected Contracts are short-term leases that would provide little value if assumed and assigned to third parties.

20.     The Trustee has not operated any of the Debtors' spas or administrative offices since his appointments, and the Leased Premises have not conferred any benefit to the Debtors' estates. Moreover, absent rejection, the Rejected Contracts could impose ongoing use and occupancy fees with no corresponding benefits, as the Debtors' operations ceased prior to the Petition Date. The Trustee has determined that these expenses would vastly outweigh any prospective value of maintaining the Rejected Contracts, even temporarily, while searching for a potential assignee. Finally, the maintenance of the Leased Premises is not needed for the administration of the Debtors' estates. As a result, the Trustee respectfully submits that termination under these circumstances is consistent with his efforts to preserve assets for the benefit of the Debtors' estates, and is a proper exercise of his business judgment. *See In re The Great Atlantic & Pacific Tea Company, Inc.*, 544 B.R. 43, 48 (Bankr. S.D.N.Y. 2016).[7]

21.     Accordingly, the Trustee seeks authority to reject the Rejected Contracts as set forth on **Schedule 1** to the Order.

---

7   Promptly after entry of the Order, the Trustee, in consultation with Rosenthal, will attempt to coordinate to surrender possession of the Leased Premises to the respective landlords and hotels operators.

**II.     Deeming Rejection of the Rejected Contracts**
        *Nunc Pro Tunc* **to the Petition Date is Appropriate**

22.     The Trustee respectfully submits that it is appropriate for the Court to deem the Trustee's rejection of the Rejected Contracts *nunc pro tunc* to the Petition Date.  Bankruptcy Code section 365 does not address whether the Court may order rejection to be applied retroactively.  *See, e.g., In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection");  *see also In re CCI Wireless*, LLC, 297 B.R. 133, 138 (D. Colo. 2003) (noting that "section 365 does not prohibit the bankruptcy court from allowing the rejection of leases to apply retroactively").

23.     Courts have held, however, that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date prior to entry of an order authorizing such rejection where the balance of equities favors such relief.  *See, e.g., BP Energy Co. v. Bethlehem Steel Corp.*, No. 02 Civ. 64191(NRB), 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("[W]e cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution.");  *In re Jamesway Corp.*, 179 B.R. at 38 (same);  *see also In re At Home Corp.*, 392 F.3d 1064, 1065-66 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection);  *In re CCI Wireless*, 297 B.R. at 140 (holding that a "bankruptcy court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject").  Moreover, the "reality of what has already occurred" in this case is undisputed:  the Trustee neither sought authority to operate the Debtors' businesses, nor did he do so.  The Leased Premises have not conferred any benefit to the Debtors' estates. Under these circumstances, the Trustee respectfully submits that this Court may enter an order

8

rejecting the Rejected Leases as of the Petition Date. *See Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Felicano*, 2020 WL 871715, at *1 (U.S. Feb. 24, 2020).

24.     The balance of equities also favors the relief requested herein. The Debtors ceased all operations prior to the Petition Date and the Trustee has not operated any of the Debtors' spas nor utilized any of the Leased Premises. The Trustee has sought the relief requested at a very early stage in these Chapter 7 Cases and does not seek to reject these Rejected Contracts effective *nunc pro tunc* to the Petition Date due to any delay on his part.[8] Moreover, as a result of the government directives issued in response to the Coronavirus pandemic in the regions covering the Leased Premises, it is unlikely that the counterparties to the Rejected Contracts would have otherwise been able to re-let or even display the Leased Premises to any prospective new tenants between the Petition Date and the date of this Motion. Consequently, neither the commencement of the Debtors' cases nor the operation of the automatic stay provided by Bankruptcy Code section 362 has deprived non-Debtor counterparties to the Rejected Contracts an opportunity to recover use and occupancy charges from other parties. As a result of all of the foregoing, the Trustee respectfully submits that it would be inequitable to shift the burden of unpaid use and occupancy charges to the Debtors' estates.

25.     Courts in this district have granted similar relief in other cases. *See, e.g., In re The McClatchy Company*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. Mar. 11, 2020); *In re Trident Holding Co., LLC*, No. 19-10384 (SHL) (Bankr. S.D.N.Y. Mar. 8, 2019); *In re Synergy Pharmaceuticals Inc., et al.,* No. 18014919(JLB) (Bankr. S.D.N.Y. April 22, 2019); *In re Doral Fin. Corp.*, No. 15-10573 (SCC) (Bankr. S.D.N.Y. Apr. 1, 2015); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y. Mar. 10, 2014); *In re Borders Grp., Inc.*, No. 11-10614

---

[8] This Motion has been filed just days after the Trustee's March 30, 2020 appointments.

9

(MG) (Bankr. S.D.N.Y. Jun. 6, 2011); *In re BB Liquidating Inc.*, No. 10-14997 (BRL) (Bankr. S.D.N.Y. Apr. 27, 2011); *In re NR Liquidation III Co.*, No. 10-12610 (SCC) (Bankr. S.D.N.Y. Jun. 8, 2010).

**III.     Section 554 of the Bankruptcy Code Authorizes the Trustee
to Abandon the Debtors' Personal Property on the Premises**

26.     Section 554(a) of the Bankruptcy Code provides that, subject to court approval, a trustee may abandon "property of the estate that . . . is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a); *see Adelphi Hosp. Corp. v. N.Y. State Dep't of Health (In re Adelphi Hosp. Corp.)*, 579 F.2d 726, 729 (2d Cir. 1978) (affirming order authorizing abandonment of property that would not benefit the debtor's estate).  Before authorizing abandonment of property, a bankruptcy court must find either (i) the property is burdensome to the debtor's estate, or (ii) the property is both of inconsequential value and inconsequential benefit to the debtor's estate.  *See, e.g., Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 509 (1986); *In re Texaco, Inc.*, 92 B.R. 38, 44 (S.D.N.Y. 1988); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 882 n.7 (Bankr. S.D.N.Y. 1990).

27.     Most of the Personal Property remains located at the Leased Premises throughout the United States and retrieving and consolidating it would impose an unwarranted burden on the Trustee and the Debtors' estates, especially in light of the Rosenthal Liens, the Rosenthal Secured Claim and various governmental directives that restrict citizen mobility.

28.     As a result of the foregoing, the Trustee has determined, in his considered business judgment, based upon the facts and circumstances of these cases, the Personal Property is burdensome to these estates and is best marshaled and liquidated by Rosenthal, except as provided herein.  Therefore, the Trustee requests

10

authority, as part of the rejection of the Leased Premises, to abandon: (a) the FF&E located at each Leased Premises to the respective landlord or hotel operator that is counterparty to that Rejected Contract[9], and (b) the remaining Personal Property, including the Cash, the Inventory and the other assets that constitute collateral subject to the Rosenthal Liens, to Rosenthal, to allow Rosenthal to liquidate the Personal Property for application to the Rosenthal Secured Claim.[10] In connection therewith, the Trustee seeks to vacate the automatic stay pursuant to section 362(d) of the Bankruptcy Code to permit Rosenthal to enforce its rights to sell or otherwise dispose of its collateral. Rosenthal has agreed that it will provide the Trustee with written accountings of its dispositions of the Personal Property and that it will promptly turnover to the Trustee all funds, if any, that exceed the Rosenthal Secured Claim.

29.     Based on the foregoing, the Trustee respectfully submits that the standard set forth in section 554(a) of the Bankruptcy Code is satisfied regarding the Trustee's request for authority to abandon the Personal Property and modify the automatic stay pursuant to section 362(d) of the Bankruptcy Code to permit Rosenthal to enforce its liens.

**IV.     The Rejection of Multiple Contracts in One Motion
Is Appropriate Under the Applicable Bankruptcy Rules**

30.     Bankruptcy Rule 9014 provides, in relevant part, that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is

---

9   Nothing contained herein is intended to impair or otherwise affect parties' respective rights under the Rejected Contracts, applicable law or otherwise.

10   For the avoidance of doubt, the Trustee is not abandoning any claims, causes of action, known or unknown, asserted or unasserted, in favor of the Debtors or their estates, including, without limitation, claims pursuant to Chapter 5 of the Bankruptcy Code.

sought."  Fed. R. Bankr. P. 9014(a).[11]  The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for a hearing are given in light of the circumstances in these cases.  *See* 11 U.S.C. § 102(1)(A) (defining "'after notice and a hearing,' or a similar phrase" to mean "after such notice as is appropriate under the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances").

31.     Under Bankruptcy Rule 6006(e), a trustee may join requests for authority to assume or reject multiple executory contracts or unexpired leases in one omnibus motion, subject to Bankruptcy Rule 6006(f).  *See* Fed. R. Bankr. P. 6006(e). Here, given the number of leases the Trustee seeks to reject, obtaining Court approval of each rejection individually would impose unnecessary administrative burdens on the Trustee and the Court, and result in costs to the Debtors' estates that may decrease the economic benefits of rejection.  The Trustee proposes that this omnibus Motion will streamline the process for rejection, consistent with applicable law, to minimize such costs and burdens, while providing proper notice to the counterparties to the Rejected Contracts.

32.     Under Bankruptcy Rule 6006(f), a motion to assume or reject multiple executory contracts or unexpired leases that are not between the same parties must:  (i) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;  (ii) list parties alphabetically and identify the corresponding contract or lease;  (iii) specify the terms, including the curing of defaults, for each requested assumption or assignment;

---

[11]   Bankruptcy Rule 9014 is made applicable to this Motion by Bankruptcy Rule 6006(a), which provides that "[a] proceeding to . . . reject . . . an executory contract or unexpired lease, other than as part of a plan, is governed by [Bankruptcy] Rule 9014."  Fed. R. Bankr. P. 6006(a).

(iv) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment; (v) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases;  and (vi) be limited to no more than 100 executory contracts or unexpired leases.  Fed. R. Bankr. P. 6006(f).  This Motion complies with all applicable requirements of Bankruptcy Rule 6006(f) and the Trustee respectfully submits that the relief sought herein and the procedure implemented by this Motion is reasonable and fair under all of the relevant circumstances.

## **RESERVATION OF RIGHTS**

33.     Nothing in this Motion should be construed as:  (a) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Trustee's or any other party in interest's ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law;  (b) a promise to pay any claim;  (c) granting third party beneficiary status or bestowing any additional rights on any third party;  or (d) being otherwise enforceable by any third party.

## **NOTICE**

34.     Notice of this Motion will be given to: (a) the U.S. Trustee, (b) any party that has requested notice pursuant to Bankruptcy Rule 2002, (c) the counterparties to the Rejected Contracts, and (d) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(b).   The Trustee submits that no other or further notice is required.

*[Concluded on Following Page]*

## NO PRIOR REQUEST

35.     No previous request for the relief sough therein has been made to

this Court or any other court.


DATED:   New York, New York
             April 10, 2020

> ALBERT TOGUT, *not individually but solely in his capacity as the Chapter 7 Interim Trustee,*
> By his Proposed Attorneys,
> TOGUT, SEGAL & SEGAL LLP,
> By:
>
> */s/ Neil Berger*
> NEIL BERGER
> A Member of the Firm
> One Penn Plaza - Suite 3335
> New York, New York 10119
> (212) 594-5000